Thank you, Mr. Mayor. This is this case, this immigration case, habeas. May it please the court. Good morning. My name is Brent Mayer and I represent Mr. Mukhtar Owais. There's no dispute that Appellant's Trial Council failed to advise Appellant that if convicted at trial of the charged offense, felony evading in a motor vehicle, that he would be subject to automatic deportation. But he did tell him to contact immigration, his immigration attorney, because there could be immigration consequences, correct? That is correct. That was Trial Council's, that was his standard operating procedure in any case involving any non-citizen client. Unfortunately... And he had an immigration council at the time, a particular one that was helping the family. That is correct. The council, though, was helping them and presumably Appellant with becoming naturalized. And he said there could be immigration consequences and that's why he needed to contact, correct? That is correct. However, as this court has recognized in an opinion written by you, Judge Elkrod, in the Armendariz case, you've recognized that that is not sufficient because that is what the Supreme Court said in Padilla v. Kentucky. Padilla v. Kentucky created an obligation on criminal defense attorneys to tell their clients when the immigration consequences are clear for the charge that they face. In this particular case, the issue is whether those immigration consequences were clear enough in 2016, right before Mr. Owais, the appellant, passed up an opportunity to plead to a non-deportable misdemeanor offense in preceded trial on the charged offense of felony evading arrest in a motor vehicle. What do you do with some of the language in Armendariz, since you referenced it, where it says this is not at all like Padilla, because where Padilla said, oh, you don't need to worry about it, the lawyer in the Armendariz case says there could be something, you need to follow up, and that's what was done in this case. Armendariz, if my recollection of the facts are correct, is that there was a lot in that case. In that particular case, the magistrate had informed the appellant in that case before entering the plea, had said in not so many terms, you will be deported. The plea agreement in that particular case had language to that effect. And again, counsel was very emphatic in their instructions to the client. What I submit is that in this particular case, counsel's advice was more like what you referred to in that Armendariz opinion as the weak or middling advice, and that is at page 552 of your opinion. Peyote and Urias and Marufo and all of that discussion. That's correct. And of course, you referenced the Urias-Marufo case. That's a case that was by Judge Davis back in 2014. In that particular case, Judge Davis, writing for the court, recognized that telling someone you might be deported, you could be deported is not sufficient. In that case, it was remanded back to the district court to consider whether or not the immigration consequences were clear. What about the fact that immigration in this day and age, it is not clear whether you're going to be deported? And this Armendariz case also discusses that and discusses, I think, United States v. Texas in that regard and other cases that say that we don't know. It is not. You cannot say you will be deported because we all know that not everyone is deported who would be eligible to be deported, and that's a whole national conversation beyond the middle management role of this court today. So I expect that's the argument that Mr. Howell is going to make to this court. That is what they're going to point to with appellant's immigration expert, Mr. Williamson, how he says nothing is ever 100% absolutely certain. But if this court looks back to the Supreme Court's decision in Padilla v. Kentucky, you'll see that Justice Steve Stevens, writing for the majority of the court, didn't require that sort of 100% exactitude. When talking about the changes in immigration law leading up to the point of Padilla's case, he talked about how, the court talks about how removal is practically inevitable and how recent changes made removal nearly an automatic result. And coming to its ultimate conclusion, the court talked about how Padilla was presumptively mandatory. So when you look at that language by the Supreme Court in Padilla, you will see that the court doesn't require that absolute certainty that a person is going to be deported, that 100% certainty, before the obligation kicks in to give them that advice. The statute at issue in Padilla was the same statute that was at issue in this case, Section 1227 of the Immigration and Nationality Act. That makes the language of the court succinct, straightforward, and clear. I think Judge Davis had a question. Yes. I mean, let's talk about AEDPA a little bit. AEDPA? Yes. The state court, state habeas court, found that the law was not clear. And so under AEDPA, the district court, as we are, are bound to follow that unless it's an unreasonable application of federal law as determined by the Supreme Court. Right. So as I understand it, your argument is that because the law was clear in the Fifth Circuit, the circuit where the habeas court was sitting, we were bound to follow that law. And what's your authority for that? So a couple components to my answer. So in regards to that last point, the law was clear as interpreted by this court, and there's ample authority that says that the law of the circuit is what controls the immigration proceedings. In this particular case, the unreasonable application of the law by the state courts is twofold. One is that they were not looking at the law in effect at the time in 2016. Yeah, I disagree with you about that. I mean, I know that in 2018, the Supreme Court decided that that clause was void for vagueness. But the court cited that case as sort of backing up what the state court had done. It didn't follow that. It didn't say that case was controlled. Well, here's where it runs contrary, Judge Davis, to Supreme Court precedent. In Strickland v. Washington and then two years later, and in Smith v. Murray, the Supreme Court of the United States made it clear that we don't look at, we don't judge counsel's performance in hindsight. We look at the circumstances in effect at that time. And that's part of the unreasonable application by the state trial courts and by the district court below. Well, I agree with that completely. But in 2016, the circuits were in disarray. They were split all kind of ways. I mean, I think there were more circuits that said it was not clear than said it was clear. So why wasn't the state court entitled to look at all that law and look at the Johnson case, which Supreme Court had decided in 2015, where they interpreted a very similar clause to this in the ACCA and said that it was void? So, you know, with all that law, as the district court said, the legal landscape was unclear, and the state court had to make a decision. So it's interesting that you bring up Johnson, because if we go back to 2016, right before Mr. Owais makes this decision to proceed to trial, I received emails from the Bar Association of the Fifth Circuit, and those informed me of what the current state of the law is, at least in this circuit. If any practitioner would have been abreast of the law at the time, they would have seen that a month prior, this court in Gonzalez versus LaGoria had rejected that argument that 16b was vague. So as a practitioner in Texas, advising a criminal client as to what the consequences are, it's really not that complicated. You've got a statute that says that you shall be deported if you are convicted of an aggravated felony. You have a statute that says an aggravated felony includes a crime of violence. You have a on point from this court in 2011 in Sanchez versus Ledesma, where it very clearly said evading arrest in violation, evading arrest in a motor vehicle is a crime of violence. And then if there's any question about the validity of 16b, the crime of violence statute, well, you look at the Gonzalez-LaGoria case, and it's as clear as it can get that it creates that obligation that the Supreme Court talked about that we as criminal defense attorneys have in order to give effect to the Sixth Amendment right to effective assistance. Yeah, but the state court was entitled to look at all the law that was in the legal landscape out there. It didn't have to just follow. Was the Supreme Court obligated to follow Fifth Circuit law when the circuits were terribly split? On the issue of whether the crime of violence statute was valid at the time. Was clear, was clear, clear and succinct and straightforward. Right. So, yes, the courts were required, sure, look at the legal landscape. Yes, there are exceptions and arguments that could be made, but when the law 1, 2, and 3 clearly state that it's going to be a crime of violence and there's no question, at least in this district or the circuit, then that should raise the obligation in this case. That is more in line with a clear immigration consequence like the court discussed, that the Supreme Court discussed in Padilla versus one of these ambiguous situations as discussed in Justice Alito's concurrent argument. Your argument, though, depends on us saying that the state court and the federal district court weren't required to read the law only in the Fifth Circuit. The state was not entitled to consider the law nationwide as the Supreme Court would if it got the case. That is correct. I mean, the . . . And do you have any authority for that, that the state court was required to follow Fifth Circuit law rather than looking at the law nationally? Yes. It's been recognized at least before the Board of Immigration Appeals in multiple cases that you follow the law of the circuit. A matter of Anselmo, which was a 1989 court decision. We're looking at AEDPA. We're looking at AEDPA. That is correct, but the question is, is what is the authority that says that you look to the law of the circuit where the proceedings are going to take place to determine whether a person is going to . . . You look at the law of the circuit where the person is to be deported to determine what is the legal effect of that. There are several Board of Immigration Appeals decisions, matter of versus Anselmo, matter of using, which we will submit to the court in a 28-J letter subsequent to this argument, that state that you follow the law of the circuit where the proceedings are taking place. So if you look at that well-established precedent, that's what says you look only to Fifth Circuit precedent to determine what is the law. And again, we want . . . I think we all want this Court's opinions to mean something, and that's what's so problematic about this case, is that none of the courts below, not a single one even cited to this Court's decision in Sanchez-Ledezma. It makes no reference to how this Court had at the time upheld the validity of 16b. And the fact that these courts ignore this Court's precedent and don't take that into consideration is where you have an unreasonable application of what the Supreme Court's precedent is in this case. Mr. Mayor, didn't your client's own expert admit that he couldn't say whether the law was truly clear that the conviction for evading arrest would result in deportation? He gave the answer that I gave to Judge Elrod, right, that there's nothing that is 100 percent certain, nothing with . . . there's not that precision, there's not that exactitude, but he did concede over and over again at page 285 of the ROA, page 291. Even in response to counseling by the state's attorney, he told them over and over again, yes, the law was clear. It was clear. Just because it's . . . the way I like to think of this is on a clear day, there's nothing that says that you have to be able to see some satellites flying in orbit, right? If you can look up and you can see that there's nothing here to call this into question, that kicks the obligation into effect for a counsel to let someone know that if you go to trial on this case, you will be deported. You will be presumptively deportable to use the Supreme Court's language in Padilla. I will yield my time for . . . yes. It relates to questions that Judge Davis was asking you. Under AEDPA, AEDPA uses the language, you know, clearly established, and sometimes we think of that in the context of qualified immunity as judges because we have all those clearly established. And, you know, that's a created doctrine. But AEDPA is a statute. And the statute, AEDPA says, was contrary to or involved in an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. So we can go round and round in qualified immunity as whether one of our own cases creates clearly established law, and we have, you know, you can look at some of our precedent. But are we at liberty to say that one of our own cases creates clearly established law or exemplifies clearly established law when the statute specifically says as determined by the Supreme Court of the United States? Yes, I understand, Judge Elrod. It's not this court's opinion that is binding. It's Padilla. Padilla says you advise someone when the consequences are clear. What this court's opinion does is it just makes it even more clear, makes it abundantly clear that evading arrest in a motor vehicle is indeed a crime of violence that is going to subject someone to deportation under Section 1227. The unreasonable application here is the court's unwillingness to follow Padilla, as well as Strickland v. Washington and Smith v. Murray, which say that you look at the law in effect at the time that representation is made. I'll yield my time for rebuttal. Thank you, and you have safe time for rebuttal. Thank you. We'll hear from Mr. Howell now. May it please the Court. My name is Doug Howell. I'm Assistant District Attorney in Brazos County, Texas, and I represent Jennifer Garrig, who is the Director of the Community Supervision and Corrections Department for Brazos County, Texas. The reason Ms. Garrig is before you today is because Mr. Owais was a probationer in her department. What I would like, Judge Davis, I think you hit the nail on the head when you started talking about legal landscape, and so what I would like to do very briefly is go over the legal landscape at the time immediately before Mr. Owais decided to go to trial. And so in 2009, we had this court's opinion inheritment, in which this court held that evading with a vehicle is a violent felony for purposes of the Armed Career Criminal Act under 18 U.S.C. 1924E. Then you go to 2011, and this court issues Sanchez-Ledezma, in which this court held evading arrest with a motor vehicle is by the logic of hermit, so Sanchez-Ledezma was relying on hermit, a crime of violence for purposes of 16B, and therefore an aggravated felony for purposes of the list of aggravated felonies. At this point, I need to stop and disagree respectfully with Mr. Mayor. Sanchez-Ledezma was quoted during the state court hearing, the writ hearing, and it is in the state court's findings of fact and conclusions of law. So at the hearing and in the findings of fact, Sanchez-Ledezma is stated. We did discuss it during the hearing and in the findings of fact that the judge signed. But it wasn't followed. But it wasn't followed, and here's why. Then we go to June 26, 2015, and the United States Supreme Court issues its opinion in Johnson v. United States, in which it held that a residual clause found in the language similar to the residual clause in section B, 16B, was void for vagueness. The reason that is employment is because Johnson v. U.S. effectively overruled hermit that was issued in . . . The date that is the operative date for this case, would you say? When is the . . . I think Johnson . . . Things might be fluid, so when is it the snapshot? When do we have to take the snapshot? As I go through the landscape, I think it all goes back to Johnson back in . . . What day should we have . . . Do we measure this by? What is the date by which the court should have said, this is our snapshot and we do it as of today? We can do it now all in retrospect and harmonize and figure . . . But what was the date that this had to be done by? By the state court. I'm not sure if there was . . . When is it that the snapshot should have been taken? Well, I don't . . . Was June part of that? Yes. When did it end? I don't think it did end. I think we were entitled to wait on . . . I mean, don't you look at the law . . . Sessions v. DiMaio. Don't you look at . . . In other words, we're judging whether the attorney was ineffective, so don't you look at the law at the time he entered the plea, at least, or when the advice was given? That's correct. In 2016? I'm sorry, go ahead. Well, I mean, and I guess where I'm going with this argument is at the time of trial, which is September 27, 2016, the law was not truly clear. As Judge Davis has brought up, the Ninth Circuit, the Seventh Circuit, and the Sixth Circuit had all held that Section 16b was void for vagueness. But your colleague is correct under immigration law that they would look at the where it sits to determine the immigration consequences to the person. And so does Padilla, in its requirement of truly clear, have one set of rules for the Fifth Circuit who says it's not void for vagueness, and another set of rules for the Ninth and the Seventh and the Sixth? It's not Padilla that's rules. It's the BIA. They're setting the rule based upon what the circuits have said in their circuit. So yes, the answer could be different depending on where the person has the crime. And that is true, and we know that from immigration law and immigration consequences. And that's where, again, appellant's expert, Mr. Williamson, he eventually could not say to the trial court that it was truly clear. And I believe this is the case. It's because the Ninth and the Seventh and the Sixth had found 16b was void for vagueness. This court in Gonzales-Lungore had not. And that was what the trial court was hearing during the time of the hearing. Right. Well, it's truly clear. I'm not sure if that's a red herring. Okay. Because he had a duty to give some immigration advice. He can't give middling or no advice. Is that the term? And I don't think he did give no advice. And the advice that he gave was you should talk to an immigration lawyer, which is what he gave in all the cases. And we established that. Yes, ma'am. But that is not to say that you were very likely to have some, that's not like in Armendariz where they said, we can't say for certain, but you are likely to have serious immigration consequences. So it's imperative that you get advice. That's a very different thing. And even if the law is unclear, that you, it should have been a much more robust advice that this, this does have the potential for very serious immigration consequences. This is not just the standard boilerplate instruction. We say, Oh, just like anyone else who's here, they, you should just always, this, this needed to be, it is imperative that you seek this advice because there are potential, extremely serious immigration things. And I can't say for certain, but it is very serious if possible. Yes, ma'am. And again, I think again, Mr. Graves was relying on the fact that the family had hired an immigration lawyer to help the family seek citizenship. I'm asking under Armendariz was the advice. I don't believe so. I think. Can you address Armendariz? No, ma'am, I can't. I am. I'll be honest. My brain is freezing and I'm not familiar with it. Apologize. No, I appreciate your candor. Yes, ma'am. Um, and again, I go on to the legal landscape where in October 19th of 2015, the Ninth Circuit held under DiMaio versus Lynch 16b void for vagueness in December of 2015, U.S. versus Vivas-Seja. The Seventh Circuit was void for vagueness. And then we get to July 16, 2016 in Schutte versus Lynch. Sixth Circuit said it was void for vagueness. But then in August of 2016, this court in U.S. versus Gonzales versus LaGoria held that 16b was not void for vagueness. Then September 27th, we have our jury trial. And to be honest, on September 29, 2016, United States Supreme Court granted certiorari in Sessions versus DiMaio. And then two years later in 2018, held or applied the same reasoning in Johnson and held that the residual clause in 16b was unconstitutionally void for vagueness. And so I understand the court's dilemma is not the right word, that Mr. Graves should have been focusing on the Fifth Circuit when potentially giving advice to his client that evading with a vehicle was a crime of violence under Section 16b. However, I think even the appellant expert was saying, I cannot tell you that it is truly clear that Mr. Graves had a duty under Padilla to say that evading with a vehicle was an automatically deportable offense. And the reason... I know that that's the problem here, that he didn't say it was automatically deported. I think the problem here is that he only, he didn't discuss... He said it could. It's possible that it's not an alien subject to presumptive deportation after pleading guilty. He had discussed only the possible adverse immigration consequences of pleading guilty. And that was deficient under Urias-Marufo that we've already talked about today. So it wasn't that he had to say for certain. It wasn't that he had to say, well, and we're in the Fifth Circuit and we know that it's for certain. He just had to say that it was very serious and and possible. And that's not that it was, you know, not just remotely possible or just generally you should always consult, but that you needed to give some particularized instruction that this was a hotly disputed topic and you need to make sure that you get immigration advice. Well, I believe... And I don't know that he... He did say that... Well, remember what was going on. The defendant, we came, my office offered a misdemeanor, straight probation on this case. The defendant did not want straight probation. He wanted a deferred misdemeanor on evading, simple evading. And we refused to give that offer because he was already on deferred probation for the misdemeanors of theft, simple evading, and disorderly conduct, which was dismissed. And so while working that problem with his client, Mr. Graves told him, I advise you to take the misdemeanor because a felony will wreck your life and it will wreck your chance at citizenship. And he said that all believing that the family had hired an immigration lawyer that was helping him get citizenship. And so again, he was relying on the father's assertion and his client's assertion that they had hired an immigration lawyer to help them get citizenship to the point where Mr. Graves said, it was my understanding from the father and from my client that we were going to put off of appellant citizenship process until after this case was over with. I don't know, even though that there is some logic to what you say, I'm concerned that under our case law, you cannot satisfy your PDEA duty through delegation to a subject matter expert. We have said that the objectively, and I'm reading from one of our cases, we have said that the objectively reasonable assistance prong of PDEA is concerned with whether the defendant was informed by the defendant's counsel of the relevant immigration consequences. Our prior holdings that immigration consequences must be relayed by the defense lawyer, him or herself, comports with how Justice Alito contemporaneously interpreted the PDEA majority opinion. So even though we did ask your friend on the other side a lot, well, didn't he have another immigration lawyer and isn't that good enough? It seems to me that there's a problem with our case law using that approach to say, so can you address that issue? Only as it goes to the facts. And in the facts in this case, I would agree even Mr. Graves admitted during the hearing he was not aware that he had an obligation under PDEA if it was an automatic deportation that he had to advise his client. If he did commit PDEA error, what result here? Well, again, I keep going back to truly clear and I just, I don't believe it was truly clear. I understand that your case law suggests and it does suggest that Mr. Graves' performance was deficient for not making it more clear that the client was subject to not automatic deportation but pretty close to deportation. But again, he did tell his client, well, Mr. Owais had already been admonished during his misdemeanor plea hearings by a misdemeanor judge that he was subject to deportation during those pleas and he still went through with them. And then by the time he got the felony, Graves was still representing him and said a felony could wreck your life. It's not good for anything. I want you to take the misdemeanor. And I. Correct on the AEDPA that it's not clear at the time, but Mr. Padilla's lawyer, I mean, Mr. Mr. Owais. Thank you. Owais' lawyer did fail under PDEA. What result here? What do we do with this case? Well, and let me say this on that. Mr. Mayor has cited the relief as far as the prejudice prong. Um, he states that we have misstated the prejudice or the trial court did citing Lee. I would disagree. I think the trial court in its findings of fact, cited the Court of Criminal Appeals opinion in, um, excuse me, ex parte argent. And that's finding number 13, um, in which the basic remedy is to send it back to the trial court and have the state reoffer the misdemeanor offer. So that would be remanded for that purpose? I believe so. Yes. If, if, if, if you went on AEDPA, but you, but you didn't succeed on that because, because his lawyer did fail, then it would go back for it to be reoffered. There's not another way that you would win anyway, or that. And as, and as, and as Mr. Mayor states in his brief, it's still up to the discretion of the trial court whether to accept the plea or not. So to be clear, I'm trying to make sure that I understand. You're conceding the prejudice prong. If we find that the attorney's performance was deficient in order to remand, we would have to find that that Mr. Owais was prejudiced by that deficient performance. I don't think it's presumptive prejudice, if that's what you're asking. I'm not asking presumptive. It sounds like you're conceding it. That's what I'm asking. I haven't worked that problem. I'm just, I don't think I'm willing to do that at this point. I will say though, if, if you're, if the holding of this court is that he violated the first prong of Strickland, again, I don't think that there is an automatic prejudice to that. And I think that's kind of where we are based on the facts that we have before us. I guess what I'm saying to you is I'm concerned just because we have a finding on the prejudice or on the deficient performance prong of Strickland, does that mean that there's a prejudice prong automatic finding? And I'll be honest, I don't know the case law on that, but I'm not willing to concede that, and I'm not willing to concede prejudice at this time. I apologize. But are you willing to engage with it? Because if we have to decide it, then we would have to grapple with that if indeed the deficiency were, assuming Arguendoa was established, and I'm not foreshadowing. As far as? Prejudice. Whether there's prejudice. Are you willing to engage with that? Because wouldn't we have to engage with that? Yes, ma'am. And I guess. And granted, the district court did not address the prejudice. Yes, ma'am. I'll have to say Mr. Graves admitted during the hearing that he did not give any advice. Well, let me ask you this. Isn't the real question whether the state habeas court misapplied the federal law as the supreme, as determined by the supreme court? In other words, the state court found that counsel, that the law was not truly clear on whether this was a violent felony or an aggravated felony, and that it was not truly clear. So counsel, when he told him, and he did tell him a little more than you, he did tell him definitely, you ought to take this misdemeanor. You could be deported. And he told him, he said, you know, a lot of bad things can happen to you if you get convicted of a felony. But anyway, taking all that, the state habeas court found that that satisfied his obligation under Strickland. And so we would have to find the double presumption that even under the double presumption, the state court misapplied clearly established law as determined by the supreme court. Isn't that the issue? Yes, sir. I believe at least that's what that's what was discussed during the trial court hearing. And that's, I believe, what we have been working with from the state trial court to the state court of appeals and to the federal district court. I'm out of time. Do you have any other questions? No, thank you. We have your argument. Thank you. Yes, ma'am. Thank you. Can you address this, what Judge Davis was just asking about, whether or not there's a deference, double deference within the Padilla analysis? There is. This court has said that in its language, that there is this double deference that's given. Not just on the AEDPA point of whether it's clearly established, but also as to the failures of the lawyer. That is correct. But again, even with that double standard, it's violated here. It's not, there's an unreasonable application of the law when the courts don't even acknowledge the weight that this court's precedent has. To answer your question that you last asked me, Judge Ramirez, I'm going to point the court back to page 314. This is Peter Williamson's testimony, and it really is the argument and the answers to the question. The question by the state's attorney is this. The question here is whether that is truly clear or whether it is not succinct and straightforward. And obviously, I'm saying it's not succinct and straightforward because even in Sanchez-Ledezma, the opinion interprets the relevant definition within the meaning of the guidelines. Here's Mr. Williamson's response. I believe, I believe that in 2016 or 2017, when he was charged as an aggravated felon, crime of violence for evading, if we had gone to a hearing before the immigration judge on that question, the immigration judge would have felt bound by that particular decision, by those decisions. And that's the truth of the matter. That's why the consequences were clear. No immigration lawyer could have gone before an immigration judge and said, no, no, no, deportation is not an option here. The law was clear in this circuit. Now he goes on and he asks, does that mean that the law was truly clear for a criminal defense attorney in Texas? Mr. Williamson's response is, I can't give you an answer to that. Well, of course he can't give an answer to that. That is a question of law. That's a question of law for someone who's familiar, like this court is, with the law on Padilla and all the subsequent opinions that have dictated when that obligation kicks in for an attorney to advise their client of the clear immigration consequences, when it is presumptively mandatory. Assuming, arguendo, that the district court here erred when it said that the whole Padilla inquiry was wrapped up whether the law was truly clear, and it only said, well, if the law's not clear, then he didn't err. And that's not, you could still err even if the law's not clear. Would the answer be to send it back to the district court to analyze the Padilla issue, assuming, yes, you're correct, that the law may not have been clear? I know you don't agree with that, but would the answer be to see if the Padilla error is prejudicial and whether or not there was Padilla error, even without clear AEDPA law? I think I understand it, and I can break it down this way. The question of not, the question or not of whether the law was clear and the state court's application of that law was contrary to or an unreasonable application of that law, that is a question of law, which this court reviews de novo. And so if this court, we hope, will say, yes, the clear obligation here is to give that advice, the prejudice prong would have to be remanded back to the district. Well, I say it would have to be. If the law is not clear, what if we agree with the state that the law is not clear? But nonetheless, the advice is deficient, could be deficient, because the law doesn't have to be clear for you to have had to give better advice under Padilla. Are you not, if you're not arguing that, then we're, no, it would be done at that point. You know, again, I think with full deference to what the law is, the law says that this is a question of law that this court has to answer. If the court finds that the immigration consequences were indeed not clear, then that obligation from Padilla v. Kentucky doesn't go into effect and you affirm the decision and we're done. I mean, that is the question of law. And again, this is why it goes back to the testimony of Mr. Williamson. You know, those aren't really facts that he's testifying to. Those are really questions of law. And so I have to concede that if this court believes that the immigration consequences were not clear, then if ADEPA is all about following the clearly established law from the Supreme Court of the United States, the clearly established law is when the consequences are clear, not 100% clear, but clear enough that it's presumptively mandatory, then the obligation kicks in to give the advice. But if it's not, then what Mr. Greaves did in this case is exactly what the Supreme Court said that he has to do in Padilla. So for that reason, I would submit that nothing has to be decided by the district court any further. This is a pure question of law that this court reviews de novo. That is my time. Thank you. Thank you. We appreciate the thoughtful arguments in this case.